No. 2012-1014

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

———————————

LIGHTING BALLAST CONTROL LLC,
*Plaintiff-Appellee*,

v.

PHILIPS ELECTRONICS NORTH AMERICA CORPORATION,
*Defendant*,

and

UNIVERSAL LIGHTING TECHNOLOGIES, INC.,
*Defendant-Appellant*.

———————————

Appeal from the United States District Court
for the Northern District of Texas in
Case No. 09-CV-0029, Judge Reed O'Connor.

———————————

**BRIEF OF THE AMERICAN BAR ASSOCIATION AS
*AMICUS CURIAE* SUPPORTING NEITHER PARTY**

———————————

*Of Counsel:*
Robert F. Altherr, Jr.
Paul M. Rivard

Laurel G. Bellows, President
    *Counsel of Record*
American Bar Association
321 North Clark Street
Chicago, IL 60654
Telephone: (312) 988-5000
abapresident@americanbar.org

*Counsel for American Bar Association*

# CERTIFICATE OF INTEREST

Pursuant to Fed. Cir. Rule 47, counsel for the American Bar Association

certifies the following:

1.      The full name of every party or amicus represented by me is:

      American Bar Association

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      N/A

3.      All parent corporations and any publicly held companies that own 10% or more of the stock of the parties represented by me are:

      None

4.      The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

      Laurel G. Bellows, President, American Bar Association

      Banner & Witcoff, Ltd:   Robert F. Altherr, Jr.
                                Paul M. Rivard

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF INTEREST ......................................................................1

II.    ARGUMENT...........................................................................................5

    A.    Fact-Finding By The District Courts In Connection With Claim
        Constructions Should Be Reviewed Under The Clearly
        Erroneous Standard. .............................................................................5

    B.    *De Novo* Review Of Claim Constructions Has Not Achieved
        The Result Intended By The *Cybor* Court. ........................................10

    C.    Similar Concerns Led To The Amendment Of Fed. R. Civ. P.
        52(a)....................................................................................................12

    D.    Policy Reasons Militate In Favor Of Deference. ................................13

    E.    This Court Should Encourage Early Resolution of Claim
        Construction Issues to Facilitate Summary Judgment
        Dispositions. .......................................................................................14

III.   CONCLUSION.........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
469 F.3d 1039 (Fed. Cir. 2006) ..................................................................3, 11

*Apex Inc. v. Raritan Computer, Inc.*,
325 F.3d 1364 (Fed. Cir. 2003) .............................................................6

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002) .............................................................6

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)...............................................................................9

*Cybor Corp. v. Fas Technologies, Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) .................................................. *passim*

*Dennison Mfg. Co. v. Panduit Corp.*,
475 U.S. 809 (1986) (*per curiam*) ............................................. 12-13

*Dickinson v. Zurko*,
527 U.S. 150 (1999).................................................................................5

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*,
114 F.3d 1547 (Fed. Cir. 1997) .............................................................9

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)...............................................................................9

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)...................................................................................13

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*,
517 U.S. 370 (1996)................................................................... *passim*

*Neomagic Corp. v. Trident Microsystems, Inc.*,
287 F.3d 1062 (Fed. Cir. 2002) .............................................................7

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) .............................................................6

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................................................3, 7, 13

*Salva Regina College v. Russell*,
    499 U.S. 225 (1991)..........................................................................................10

*United States v. Adams*,
    383 U.S. 39 (1966).............................................................................................6

**Rule**

Fed. R. Civ. P. 52 ...........................................................................................12, 13

**Other Authorities**

"A Section White Paper: Agenda for 21st Century Patent Reform," ABA
    Section of Intellectual Property Law, revised September 2010, available at
    http://www.americanbar.org/content/dam/aba/administrative/intellectual_pr
    operty_law/advocacy/white_paper_sept_2010_revision.authcheckdam.pdf........4

Christian Chu, *Empirical Analysis of the Federal Circuit's Claim
    Construction Trends*, 16 BERKELEY TECH. L.J. 1075 (2001).............................11

Fed. R. Civ. P. 52 advisory comm. nn. (West 1985) ...............................................12

Giles S. Rich, *Extent of Protection and Interpretation of Claims—American
    Perspectives*, 21 Int'l Rev. Indus. Prop. & Copyright L. 497 (1990)...................8

*Guidelines for Patent Claim Construction: The Basics of a Markman
    Hearing*, 14 Fed. Cir. B. J. 771 (2005) ...................................................8

Kimberly A. Moore, *Markman Eight Years Later: Is Claim Construction
    More Predictable?*, 9 Lewis & Clark L. Rev. 231 (2005) ...................................11

Resolution #302 presented to and adopted by the ABA House of Delegates on
    August 9-10, 2004................................................................................3, 4

## I.     STATEMENT OF INTEREST

The American Bar Association ("ABA") respectfully submits this brief in support of neither party.[1]  The ABA urges the Court to overrule *Cybor Corp. v. Fas Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998), and to hold that although the Court will review the ultimate issue of claim construction *de novo*, the Court will review the underlying findings of fact made by the trial court in construing a claim term only under the clearly erroneous standard.  The ABA also urges the Court to issue guidance as to the methodology to be used by the district courts in making their findings of fact and to instruct them to identify the findings on which their claim construction determinations are based, with the understanding that this Court, on appeal, may disagree with their distinctions between findings of fact and conclusions of law.

The ABA is the largest voluntary professional membership organization and the leading organization of legal professionals in the United States.  Its nearly 400,000 members come from all fifty states and other jurisdictions, and include attorneys in private law firms, corporations, non-profit organizations, government agencies, and prosecutor and public defender offices. They also include judges,

---

[1] Amicus Curiae, ABA, states that this brief has not been authored in whole or in part by counsel for a party and that no person or entity, other than Amicus, its members, or its counsel, has made a monetary contribution to the preparation or submission of this brief.

1

legislators, law professors, law students, and non-lawyer "associates" in related fields.[2]

The ABA's Section of Intellectual Property Law ("IPL Section") is the world's largest organization of intellectual property professionals. Its approximately 25,000 members represent patent owners, accused infringers, individual inventors, large and small corporations, research institutions, and public and private colleges and universities across a wide range of technologies and industries. Formed in 1894, the IPL Section works to promote the development and improvement of intellectual property law. Through a process for developing, articulating and adopting consensus positions of the diverse members of the legal profession working in this field, the IPL Section is able to take an active role in the consideration of proposed legislation, administrative rule changes and international efforts. It uses this same process to develop and present resolutions to the ABA House of Delegates for adoption as ABA policy.[3] These policies then provide a

---

[2] Neither this brief nor the decision to file it should be interpreted to reflect the views of any judicial member of the American Bar Association. No inference should be drawn that any member of the Judicial Division Council has participated in the adoption of or endorsement of the positions in this brief. This brief was not circulated to any member of the Judicial Division Council prior to filing.

[3] Only recommendations adopted by vote of the ABA's House of Delegates, but not the accompanying reports, become ABA policy. The House of Delegates is composed of 560 delegates representing states and territories, state and local bar associations, affiliated organizations, sections and divisions, ABA members and the Attorney General of the United States, among others. See ABA General Information, *available at* http://www.americanbar.org/groups/leadership/delegates.html, and ABA amicus brief information, *available at* http://www.americanbar.org/amicus.

basis for the preparation of ABA *amicus curiae* briefs, which are filed primarily in this Court and the United States Supreme Court.

Directly relevant to this case, the IPL Section's Resolution #302 was presented to and adopted by the ABA House of Delegates on August 9-10, 2004.[4] After setting out principles recommended for use by a trial court in determining the meaning and scope of patent claims, the Resolution concludes by recommending that, "[w]hile the ultimate issue of claim construction should be reviewed de novo, an appellate court should review only by the clearly erroneous standard any underlying findings of fact made by a trial court in connection with construing a claim term." *Id.* at 2.

This policy provided the basis for the ABA's amicus briefs filed in this Court in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc);[5] and in the United States Supreme Court in support of the petition for certiorari filed in *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 469 F.3d 1039 (Fed. Cir. 2006).[6]

---

[4] Resolution #302 is printed in full in the Addendum.  The Resolution and its accompanying Report are available at http://www.americanbar.org/directories/policy.html (search "2004 AM 302").

[5] ABA amicus brief available at http://www.americanbar.org/groups/committees/amicus.html.

[6] ABA amicus brief available at http://www.americanbar.org/groups/committees/amicus.html.

Developed through the IPL Section's extensive collaborative process, this policy

reflects the experiences of patent lawyers, their clients, and others who seek to

protect intellectual property through the patent system.  It reflects the consensus

that the Federal Circuit's existing practice of reviewing patent claim construction

determinations without deference to the district courts' findings on the underlying

or subsidiary facts does not properly account for the often fact-intensive

complexities inherent in these cases.  *See id.* at 12-13.[7]

The ABA urges that review by this Court of a trial court's underlying

findings of fact made in connection with construing a claim term should be under

---

[7] The ABA notes that the consensus set out in ABA Policy #302 is also
reflected in the IPL Section's publication, "A Section White Paper:  Agenda
for 21st Century Patent Reform" ("White Paper"), ABA Section of
Intellectual Property Law, revised September 2010, available at
http://www.americanbar.org/content/dam/aba/administrative/intellectual_property_
law/advocacy/white_paper_sept_2010_revision.authcheckdam.pdf.  Although not
adopted as ABA policy, this White Paper also recommends that at least the
following questions should be characterized as findings of fact related to claim
construction: (i) who qualifies as a person of ordinary skill in the art; (ii) what was
the state of the art at the time of the invention (the scope and content of the prior
art); (iii) the differences between the prior art and the claims at issue; (iv) how a
person of ordinary skill in the art would understand a claim term; (v) how a claim
term is used in the written description portion of the specification of the patent;
(vi) how a claim term is used in the prosecution history of the patent (how one of
ordinary skill in the art would understand statements made by the applicant during
prosecution); (vii) how a claim term is used in the prior art; (viii) what relevant
texts, including dictionaries and treatises, say about the meaning of the claim term;
and (ix) what experts in the art say about the meaning of a claim term.  *Id.* at 44.

the clearly erroneous standard.[8]  Having had considerable experience with the

impact of the Court's *de novo* review on businesses and individuals across a wide

range of technologies and industries, the ABA believes its insights may be of

assistance to the Court as it reviews this standard.

## II.     ARGUMENT

### A.     Fact-Finding By The District Courts In Connection With Claim Constructions Should Be Reviewed Under The Clearly Erroneous Standard.

In *Cybor*, this Court stated that a district court's claim construction, even

when "enlightened by such extrinsic evidence as may be helpful, is still based upon

the patent and prosecution history.  It is therefore still construction, and is a matter

of law subject to *de novo* review."  *Cybor*, 138 F.3d at 1454 (citing *Markman v.*

*Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (en banc), *aff'd*, 517

U.S. 370 (1996) ("*Markman I*")).  The ABA respectfully asserts that, even when

the patent documents themselves are sufficient for determining a claim

construction, such that no extrinsic evidence is needed, the district court still must

make findings of fact based on those documents, and that such factual

underpinnings of a claim construction should be reviewed only for clear error.

---

[8] The ABA notes that this amicus brief does not discuss the substantial evidence standard of review for underlying findings of fact made by a federal agency in construing a claim term.  See *Dickinson v. Zurko*, 527 U.S. 150 (1999).

As shown by the case law, district courts make a number of findings of fact in determining the appropriate construction of claim terms. *See, e.g., Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (claim construction "begin[s] with an examination of the intrinsic evidence, i.e., the claims, the other portions of the written description, and the prosecution history . . . . Additionally, dictionary definitions may be consulted in establishing a claim term's ordinary meaning.") (internal citation omitted). Review of the intrinsic evidence, however, may not yield clear-cut results. For example, in reviewing the specification, the district courts must ensure that the ordinary meaning of a claim term is determined in the context of the invention. *See United States v. Adams*, 383 U.S. 39, 49 (1966) ("it is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention."). The district courts may also need to determine whether the inventor has acted as his or her own lexicographer. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[T]he claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history."). And the courts may need to consider whether an applicant disclaimed subject matter when explaining the nature of the invention during prosecution, thus limiting the breadth of a claim term. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003)

("But where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender."). The dialogue with the Patent and Trademark Office ("PTO"), in turn, may be indicative of how a person of ordinary skill in the art would understand a claim term.

When ambiguity as to the ordinary meaning of a claim term remains after consulting the primary sources, it may be necessary for the district courts to consult secondary sources, such as expert testimony.  *See, e.g., Neomagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("Unfortunately, on the record before us, we are unable to say with certainty whether or not one of skill in the art would understand that a power supply is designed to provide a constant voltage to a circuit.  Given the complex technology involved in this case, we think that this matter can only be resolved by further evidentiary hearings, including expert testimony, before the district court.").  And, where expert testimony is required, credibility determinations may be determinative.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996) ("It is, of course, true that credibility judgments have to be made about the experts who testify in patent cases, and in theory there could be a case in which a simple credibility judgment would suffice to choose between experts whose testimony was equally consistent with a patent's internal logic."); *see Phillips*, 415 F.3d at 1319 (Fed. Cir. 2005) (en

7

banc) ("in weighing all the evidence bearing on claim construction, the [district] court should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly."). Indeed, in the present case, the district court received competing testimony from witnesses regarding what a person of ordinary skill in the art would understand a claim term to mean.

Contested claim language, moreover, typically involves scientific terms, or terms having a specialized meaning in a particular industry. These are intrinsically inquiries of a highly factual nature. The procedure by which the district courts usually interpret claim terms – the *Markman* hearing – is, in substance, a bench trial during which the judge acts as the finder of fact on certain issues. Some courts combine the so-called *Markman* procedure with other proceedings, such as a hearing on a motion for summary judgment of infringement or validity. Nevertheless, the proceeding frequently involves the receipt of evidence. *See*, *e.g.*, *Guidelines for Patent Claim Construction: The Basics of a Markman Hearing*, 14 Fed. Cir. B. J. 771, 779 (2005). This process is so vital to patent litigation that it often dictates the eventual conclusions on the core issues of validity and infringement. Giles S. Rich, *The Extent of the Protection and Interpretation of Claims—American Perspectives*, 21 Int'l Rev. Indus. Prop. & Copyright L. 497, 499 (1990) ("the name of the game is the claim.").

In short, the factual underpinnings of a district court's claim interpretation are the result of the court's weighing of the intrinsic and extrinsic evidence before it.  Nevertheless, in affirming the *de novo* standard of review for the district courts' claim construction, the *Cybor* Court included "any allegedly fact-based questions relating to claim construction," *Cybor*, 138 F.3d at 1456, and specifically "disavow[ed] any language in previous opinions . . . to the contrary." *Id.*, citing, *e.g.*, *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1555-56 (Fed. Cir. 1997) (recognizing trial court's "trained ability to evaluate [expert] testimony in relation to the overall structure of the patent" and the trial court's "better position to ascertain whether an expert's proposed definition fully comports with the specification and claims").

Although claim construction has both factual and legal components, the ABA respectfully asserts that this does not mean that patent interpretation requires a more rigorous appellate review than other fact/law issues.  As the Supreme Court recognized, district courts are better situated to apply fact-dependent legal standards.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990) ("Familiar with the issues and the litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard. …"); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995) ("the reviewing attitude that a court of appeals takes toward a

district court decision should depend upon the respective institutional advantages of trial and appellate courts") (internal quotations omitted); *Salva Regina College v. Russell*, 499 U.S. 225, 233 (1991) ("deferential review of mixed questions of law and fact is warranted when it appears that the district court is better positioned than the appellate court to decide the issue in question or that probing appellate scrutiny will not contribute to the clarity of legal doctrine") (internal quotation omitted).

Under *Cybor*, however, claim construction is resolved without any recognition of these systemic efficiencies and constraints. District court findings on the fact-intensive inquiries underlying claim constructions should be given deference for precisely these reasons.

### B. *De Novo* Review Of Claim Constructions Has Not Achieved The Result Intended By The *Cybor* Court.

The *de novo* review of all aspects of claim construction has not had the intended effect of "providing national uniformity to the construction of a patent claim," *Cybor*, 138 F.3d at 1455; instead, as one Federal Circuit judge has stated:

> In my view, four practical problems have emerged under the *Markman-Cybor* regime: (1) a steadily high reversal rate; (2) a lack of predictability about appellate outcomes, which may confound trial judges and discourage settlements; (3) loss of the comparative advantage often enjoyed by the district judges who heard or read all of the evidence and may have spent more time on the claim constructions than we ever could on appeal; and

> (4) inundation of our court with the minutia of construing numerous disputed claim terms (in multiple claims and patents) in nearly every patent case.

*Amgen*, 469 F.3d at 1040 (Michel, C.J., dissenting from denial of rehearing *en banc*). *See also* Kimberly A. Moore, *Markman Eight Years Later: Is Claim Construction More Predictable?*, 9 Lewis & Clark L. Rev. 231, 246-247 (2005) (citing 34.5% reversal rate for 1996-2003 and commenting, "With judicial claim construction now nearing its adolescence . . . there should be more predictability. The reversal rate ought to be going down, not up."); Christian Chu, *Empirical Analysis of the Federal Circuit's Claim Construction Trends*, 16 BERKELEY TECH. L.J. 1075, 1077 (2001) (with no deference afforded to the district court, parties have every incentive to appeal and less incentive to settle, regardless of the outcome at trial, further fueling the substantial reversal rate); *Cybor*, 138 F.3d at 1478 (Rader, J., dissenting) (a sterile appellate record "can never convey all the nuances and intangibles of the decisional process," and "careful consideration of the institutional advantages of the district court would counsel deference").

Finally, Judge Rader, in his dissent, also stated, "Trial attorneys must devote much of their trial strategy to positioning themselves for the 'endgame' – claim construction on appeal. As the focus shifts from litigating for the correct claim construction to preserving ways to compel reversal on appeal, the uncertainty, cost, and duration of patent litigation only increase." *Id.* at 1476.

## C.    Similar Concerns Led To The Amendment Of Fed. R. Civ. P. 52(a).

Concerns similar to the above led to the amendment of Fed. R. Civ. P. 52(a) in 1985 to make clear that all findings of fact made by the trial court, regardless of whether they are based on credibility determinations, must be reviewed for clear error.  As the Advisory Committee explained:  "To permit courts of appeals to share more actively in the fact-finding function would tend to undermine the legitimacy of the district courts in the eyes of litigants, multiply appeals by encouraging appellate retrial of some factual issues, and needlessly reallocate judicial authority."  Fed. R. Civ. P. 52 advisory comm. nn. (West 1985).  The drafters of Rule 52(a) recognized that in situations where the district court was acting in a fact-finding capacity, an appellate court should not set aside such factual findings unless they are clearly erroneous.  As stated in Rule 52(a)(6), "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."

Although Rule 52(a) on its face applies only to "an action tried on the facts without a jury or with an advisory jury," claim construction proceeds under what is effectively a bench trial.  Further, it is well settled that Rule 52(a) governs appellate review of the factual inquiries underlying the ultimate legal issue of obviousness, which is another important question of federal patent law.  *Dennison*

*Mfg. Co. v. Panduit Corp.*, 475 U.S. 809, 811 (1986) (*per curiam*) ("[W]hether or not the ultimate question of obviousness is a question of fact subject to Rule 52(a), the subsidiary determinations of the District Court, at the least, ought to be subject to the Rule."). The Supreme Court's conclusion that findings of fact inherent in determining obviousness should be reviewed for clear error suggests that the same standard may be applicable to the fact-based findings in claim construction, particularly given the overlap and close similarity of several of the particular findings. These include (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; and (3) the differences between the claimed invention and the prior art. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

### D.    Policy Reasons Militate In Favor Of Deference.

This Court should afford deference to district court findings undergirding claim interpretations because, "not only is it more efficient for the trial court to construct the record, the trial court is *better*, that is, more accurate, by way of both position and practice, at finding facts than appellate judges." *Phillips*, 415 F.3d at 1334 (Mayer, J., dissenting) (emphasis in original). Applying the clearly erroneous standard is also consistent with the Federal Circuit's goal of promoting uniformity in patent law.

In *Cybor*, this Court stated that independent appellate review of claim construction decisions was necessary to protect its "role in providing national

uniformity to the construction of a patent claim." *Cybor*, 138 F.3d at 1455; *see also*, *id.* ("uniformity to the construction of a patent claim . . . would be impeded if [the court] were bound to give deference to a trial judge's asserted factual determinations incident to claim construction"). Yet, ultimately, the issue is one of law. Thus, there is little risk of inconsistent claim construction rulings on the same term in the same patent, as an earlier claim construction determination by this Court would be binding in future litigation under principles of *stare decisis*, and in some instances, issue preclusion. By deferring on factual questions in connection with claim construction, this Court can maintain its role over claim construction decisions while at the same time promoting legitimacy of the district courts, decreasing the number of appeals, and appropriately allocating judicial resources.

> ### E.     This Court Should Encourage Early Resolution of Claim Construction Issues to Facilitate Summary Judgment Dispositions.

One of the efficiencies in patent litigation flowing from *Markman* is the district courts' ability to resolve many cases on summary judgment. By categorizing certain aspects of claim construction as findings of fact, some district courts may be tempted to defer claim construction issues until trial. In developing a framework for reviewing underlying findings of fact in claim constructions under a clearly erroneous standard, this Court should encourage early resolution of claim construction issues to maintain the efficiencies inherent in judicial claim

construction under *Markman* so that appropriate cases can be resolved on summary judgment.

To facilitate this Court's review post-*Cybor*, the ABA also urges the Court to issue guidance as to the methodology to be used by the district courts in making their findings of fact and to instruct them to identify the findings on which their claim construction determinations are based, with the understanding that this Court, on appeal, may disagree with their distinctions between findings of fact and conclusions of law.

## III.    CONCLUSION

For the foregoing reasons, the ABA urges this Court to overrule *Cybor*, and to hold that factual findings made by a district court in the course of interpreting patent claims should be reviewed under the clearly erroneous standard of review.

Respectfully submitted,

/s/ Laurel G. Bellows

|  |  |
|---|---|
| *Of Counsel:* | Laurel G. Bellows, President |
| Robert F. Altherr, Jr. | *Counsel of Record* |
| Paul M. Rivard | American Bar Association |
| Banner & Witcoff, Ltd. | 321 North Clark Street |
| 1100 13th Street, NW, Suite 1200 | Chicago, IL 60654 |
| Washington, DC  20005 | Telephone: (312) 988-5000 |
| Telephone: (202) 824-3000 | abapresident@americanbar.org |

*Counsel for American Bar Association*

15

# ADDENDUM

Resolution #302
presented to and adopted by the ABA House of Delegates
on August 9-10, 2004

**AMERICAN BAR ASSOCIATION**

**ADOPTED BY THE HOUSE OF DELEGATES**
**August 9-10, 2004**

RESOLVED, That the American Bar Association recommends that courts apply the following principles in interpreting claim terms in a patent—

   --In construing a patent claim term, the ordinary meaning of the claim term to one of ordinary skill in the art as used in the context of the patent shall apply, unless (a) the patentee has acted as his or her own lexicographer, in which case the patentee's definition should control; or (b) there has been a clear disavowal of claim scope, in which case the patentee should be bound by such action. In determining the ordinary meaning of the claim term to one of ordinary skill in the art as used in the context of the patent, the court shall look to dictionaries and similar sources, the specification and the prosecution history;

   --While technical dictionaries should be given more weight than general purpose dictionaries, all types of dictionaries and similar sources should be considered;

   --In construing or interpreting any disputed portion of a patent claim, courts should not rely on dictionaries and similar sources unless (a) that material has been made part of the record and (b) the parties have had a full and fair opportunity to address, challenge, or rebut that material;

   --Courts should not apply a rule of claim construction whereby the specification is the primary source for claim construction such that the range of ordinary meaning of claim language is limited to the scope of the invention disclosed in the specification;

   --Courts should not apply a rule of claim construction whereby the claim construction methodologies in the majority and dissent in the now-vacated panel opinion in *Phillips v. AWH Corp*., 363 F.3d 1207 (Fed. Cir. 2004), are treated as complementary methodologies such that there is a dual restriction on claim scope, and a patentee must satisfy both limiting methodologies in order to establish the claim coverage it seeks;

   --Courts should not consider invalidity under, e.g. 35 U.S.C. 102, 103, and 112, when construing claim terms in a patent;

   --Courts should apply a rule of claim construction in which the prosecution history is given the same weight as the specification and both are considered in every case when evaluating the meaning of a claim term;

   --Trial courts should receive expert testimony at the court's discretion to educate the court on the technology, but expert testimony may not be used to contradict the claim meaning discernable from the dictionaries and similar sources, specification, and prosecution history;

**302**

      --While the ultimate issue of claim construction should be reviewed de novo, an appellate court should review only by the clearly erroneous standard any underlying findings of fact made by a trial court in connection with construing a claim term.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 16th day of May, 2013, I caused this Brief of the American Bar Association as *Amicus Curiae* Supporting Neither Party to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to counsel of record.

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Paul M. Rivard

*Of Counsel:*
Robert F. Altherr, Jr.
Paul M. Rivard
Banner & Witcoff, Ltd.
1100 13th Street, NW, Suite 1200
Washington, DC  20005
Telephone: (202) 824-3000

Laurel G. Bellows, President
*Counsel of Record*
American Bar Association
321 North Clark Street
Chicago, IL 60654
Telephone: (312) 988-5000
abapresident@americanbar.org

*Counsel for American Bar Association*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*3,699*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  May 16, 2013          /s/ Paul M. Rivard
                                     *Of Counsel for American Bar Association*